## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**ALONDA GOBERT,** *et al.*,                           **CASE NO:  6:15-cv-00222**
**Individually and on behalf**
**of others similarly situated**              **JUDGE REBECCA F. DOHERTY**

**V.**                              **MAGISTRATE JUDGE C. MICHAEL HILL**

**ALLSTATE INSURANCE CO.**


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRELIMINARY**
**MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

Table of Contents     i

Table of Authorities     ii

Memorandum in Support of Preliminary Motion for Class Certification     1

I.     Introduction     1

II.     Brief Background     3

III.     Argument     4

    A.    The Proposed Class satisfies all Rule 23(a) prerequisites.     5

       1.   Numerosity     5

       2.   Commonality     6

       3.   Typicality     10

       4.   Adequacy of Representation     11

    B.   The Court should certify the Class pursuant to Rule 23(b)(3).     12

       1.   Predominance     13

       2.   Superiority     16

IV.     Conclusion     17

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184 (2013)      9,13

*Bell Atl. Corp. v. AT & T Corp.,* 339 F.3d 294 (5th Cir.2003)              13,14

*Bertulli v. Independent Association of Continental Pilots,*
    242 F.3d 290 (5th Cir. 2001)                       8,14

*Colindres v. QuitFlex Mfg.,* 235 F.R.D. 347 (S.D. Tex. 2006)              5

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2003)                         13

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998)                  12

*In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014)                    7,8,13

*In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)        5

*In re Oil Spill by Oil Rig Deepwater Horizon,*
    295 F.R.D. 112 (E.D. La. 2013)                        16

*Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)     10

*James v. City of Dallas,* 254 F.3d 551 (5th Cir. 2001)                     11

*Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468 (5th Cir. 1986)            11

*Maldonado v. Ochsner Clinic Foundation,* 493 F.3d 521 (5th Cir. 2007)    13

*M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832 (5th Cir. 2012)           7,8,11

*Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir. 1999)       6

*Pederson v. La. State Univ.,* 213 F.3d 858 (5th Cir. 2000)                5

*Shipes v. Trinity Indus.,* 987 F.2d 311 (5th Cir. 1993)                   11

*Simms v. Jones* 296 F.R.D. 485 (N.D. Tex. 2013)                           7

*Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598 (5th Cir. 2006)   12,14

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011)                   7,8

*Woodard v. Andrus*, 272 F.R.D. 185 (W.D. La. 2010)                          11

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)           17

*Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030 (5th Cir. 1981)          5,6

**STATUTES**

FED. R. CIV. P. 23(a)(1)                                                      5,6

FED. R. CIV. P. 23(a)(2)                                                      6,7,8,9,10

FED. R. CIV. P. 23(a)(3)                                                      10,11

FED. R. CIV. P. 23(a)(4)                                                      11,12

FED. R. CIV. P. 23(b)(3)                                                      12,13,14,16,17

La. R.S. 22:1892                                                              2,9,10,11,12,14,15

La. R.S. 22:1973                                                              9,10

**OTHER AUTHORITIES**

Newberg on Class Actions §3:13 (5th ed.)                                      5

Newberg on Class Actions §4:87 (5th ed.)                                      17

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRELIMINARY MOTION FOR CLASS CERTIFICATION

ALONDA GOBERT, individually and also on behalf of all those persons similarly situated, respectfully submits this Preliminary Motion for Class Certification. Plaintiff notes that this motion is being submitted pursuant to Local Rule 23.1(B), and reserves her right to supplement the Motion for Class Certification upon the conclusion of discovery. Plaintiff also requests that the Court suspend the hearing date on this motion until discovery has been completed.

### I.      Introduction

Insurance is a special type of contract. The consumer pays premiums to the insurance company. In return, the insurance company pays benefits to the consumer if one of the things that the consumer is paying premiums to protect against – in this case, vehicle property damage – occurs. But because of the special nature of the relationship between the insurance company and the insured, an insurance company may not engage in the same type of free-wheeling profit motivation (oftentimes to the detriment to the party on the other side of the transaction) that other for-profit companies might employ. Instead an insurance company owes a special duty to its insured. In Louisiana, that duty of "good faith and fair dealing" has long been enshrined in the law and insureds are provided specific protections regarding an insurance company's duties when adjusting and paying for property loss. This case is about an insurance company's violations of those specific protections.

This case is about Allsate Insurance Company's (hereinafter "Allstate") use of a claims company system called Audatex Autosource Valuation (hereinafter "Audatex") to determine the total loss value of vehicles for its insureds. It is a system that intentionally undervalues the vehicle's worth and thereby cheats its insureds out of the full amount owed under the terms and

conditions of their policies.  Use of this system violates Louisiana statutory law in that it is not a "generally recognized used motor vehicle industry source" as required by La. R.S. 22:1892 B(5)(b).  Audatex is not relied upon by anyone in the used motor vehicle industry.  It is simply a claims handling tool used by Allstate for the purpose of paying less than it owes on its insureds' claims in order to maximize profits.

As a general rule, people do not want to make claims with their own insurance company, but when they do, they have a reasonable expectation that their insurance companies will deal with them in an honest and fair manner.  Allstate intentionally set out to take advantage of these beliefs and expectations by using Audatex instead of a generally recognized used motor vehicle industry source.

The value of a used car is the amount the public/consumer is willing to pay for it in an arms-length transaction between a willing seller and a willing buyer.  In today's world, consumers determine the amount they will pay for a used vehicle through the use of several sources.  Services like NADA and Kelley Blue Book allow consumers to quickly determine the amount of a vehicle.  Sellers, both private and commercial, know this and price their vehicles accordingly.  Allstate's Audatex system ignores this reality.  It does not take into account the fair market value of the vehicle.  Instead, it uses a system of obscure adjustments based on unexamined, yet allegedly "comparable," vehicles to fix values.  Allstate then pays a fraction of the actual value for the total loss vehicles.  In the case of the Plaintiff, Allstate's valuations on her total loss vehicles were always significantly less than the average retail value set by NADA, a generally recognized used motor vehicle industry source.

The class claims presented herein are based on the fact that the Audatex computer program used by Allstate uniformly misapplies the data provided by adjusters in ways that are

2

inherently deceptive and violate Louisiana law, resulting in class members receiving considerably less than they would have received if Allstate had utilized one of the recognized used motor vehicle industry sources available to derive values from the same data.  These claims, involving questions about automated systems which are applied uniformly to all class members, are uniquely suited to class action treatment.

## II.      Brief Background

Plaintiff Alonda Gobert's vehicle was involved in an automobile accident on February 28, 2009.  The vehicle, a 1992 Chevrolet C1500 Silverado 2 wd, was severely damaged in the accident to the extent that estimates to repair the vehicle rendered it a total loss.  Plaintiff made a claim against the collision provision of her automobile insurance policy with Allstate.  A NADA Valuation Report for Plaintiff's vehicle set its value at approximately $4,150.00.  However, Allstate prepared its own Audatex report, which determined that the market value of the Plaintiff's vehicle was only $2,290.00, almost half of the NADA valuation. Despite the disparity in values produced by Audatex as compared to the industry-recognized NADA system, Allstate refused to negotiate in good faith with Plaintiff and only tendered an amount of approximately $2,290.00 to the Plaintiff.

On or about July 20, 2009, Plaintiff was involved in another automobile accident in St. Landry Parish, Louisiana.  The vehicle, a 2000 Chevrolet Cavalier STD 4D Sedan, was so damaged that it was declared a total loss.  Plaintiff made a claim against the collision provision of her automobile insurance policy with Allstate.  A NADA Valuation Report for Plaintiff's vehicle set its value at approximately $3,150.00.  However, Allstate prepared an Audatex report, which determined that the market value of the Plaintiff's vehicle was only $2,260.00, almost 30% less than the NADA valuation. Despite the disparity in values produced by Audatex as

3

compared to the industry-recognized NADA system, Allstate refused to negotiate in good faith with Plaintiff and only tendered an amount of approximately $2,260.00 to the Plaintiff.

Finally, Plaintiff was involved in another automobile accident in St. Landry Parish, Louisiana on or about March 9, 2012.  The vehicle, a 2008 Nissan Altima 2.5, 4D Sedan, was declared a total loss.  Plaintiff made a claim against the collision provision of her automobile insurance policy with Allstate.  A NADA Valuation Report for Plaintiff's vehicle set its value at approximately $14,525.00.    However, Allstate again prepared an Audatex report, which determined that the market value of the Plaintiff's vehicle was only $13,567.00, almost $1,000.00 less than the NADA valuation.  Despite the disparity in values produced by Audatex as compared to the industry-recognized NADA system, Allstate refused to negotiate in good faith with Plaintiff and only tendered an amount of approximately $13,567.00 to the Plaintiff.

### III.    Argument

The putative class, at this time, is defined as follows:

> **All named Allstate Insurance Company insureds who received payment for total loss vehicles located in the State of Louisiana, under the terms of their collision automobile insurance policy with Allstate Insurance Company, utilizing the Audatex Autosource Valuation system from the date the Audatex Autosource Valuation system was first implemented at Allstate Insurance Company to the date of notice of class certification.**

The class definition meets the threshold requirement that a class be defined with adequate precision to allow an objective determination of membership issues.  The elements of class membership are:  (1) Allstate's insureds with an automobile policy; (2) whose policies were issued in Louisiana; and (3) who received monies for the total loss of their vehicles based on an adjustment made using Audatex.  The identities of the putative class members can be determined from Allstate's own records.  There is no merits based inquiry in determining who is a member of the class, and should the Court determine that the class definition requires further refinement,

4

it may in its discretion limit or modify the definition when discovery or trial add relevant facts to the record.[1]

### A.   The Proposed Class satisfies all Rule 23(a) prerequisites.

Here, the Rule 23(a) prerequisites to certify a class action are satisfied.  The class is too numerous for joinder to be practical.  The claims of each class member are common to the others.  The claims of the class representative are typical to other class members since a finding of liability will apply to all.  The class representatives and their counsel are adequate.

### 1.   Numerosity.

This requirement is satisfied upon a showing that there are so many members in the proposed class that "joinder of all members is impracticable."[2] It is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members.[3] But a plaintiff "must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[4] Generally, a plaintiff must show enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members.[5]

Here, the numerosity requirement cannot seriously be disputed by Allstate as it is one of the largest automobile insurers in Louisiana.  In its Notice of Removal, Allstate represented to the Court that from 2006 through 2012, "Allstate Insurance Company paid more than 19,000 Collision total loss property damage claims in the State of Louisiana alone," and that the number

---

[1] *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004).
[2] Fed. R. Civ. P. 23(a)(1).
[3] See *Colindres v. QuitFlex Mfg.,* 235 F.R.D. 347, 372, (S.D. Tex. 2006) (finding that the plaintiffs satisfied the numerosity requirement despite the fact that "[i]mperfect employment records have suggested a variety of numbers of potential class members, but plaintiffs need not provide a precise number of potential class members to meet the numerosity requirement.").
[4] *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir. 1981)).
[5] Newberg on Class Actions §3:13 (5th ed.).

of putative class members "far exceeds 100."[6]

There is no bright-line or hard-and-fast rule as to how many putative class members is enough, but numerosity is presumed satisfied if there are 40 or more members.[7]  However, the actual number of class members is not the sole determinative question, for "(t)he proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[8]

Thus, a number of facts other than the actual or estimated number of purported class members may be relevant to the "numerosity" question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.[9] "It is not surprising, therefore, that no definitive pattern has emerged under Rule 23(a)(1) in terms of the number of purported class members. Indeed, classes with as few as twenty-five or thirty members have been certified by some courts."[10]

Based on Allstate's own Notice of Removal, the numerosity requirement is clearly satisfied here.

### 2.      Commonality.

Under Federal Rule of Civil Procedure 23(a)(2), the plaintiffs must demonstrate that "there are questions of law or fact common to the class."  Under the Supreme Court's decision in *Wal–Mart,* "Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally

---

[6] Dkt. No. 1.
[7] *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999).
[8] *Zeidman v. J. Ray McDermott & Co.,* 651 F. 2d 1030, 1038 (5th Cir. 1981) (citing *Philips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981).
[9] *Id.*
[10] *Id.*

raises common questions.'"[11] "[T]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant."[12] Thus, "'the commonality test is no longer met when the proposed class merely establishes that there is at least one issue whose resolution will affect all or a significant number of the putative class members.'" [13] Instead, Rule 23(a)(2) requires that "all of the class member's claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the class member's claims in one stroke.'"[14]

But commonality does not require that all claims be common to all class members. One common claim is enough.[15]

The United States Fifth Circuit Court of Appeals recently dealt in depth with the commonality factor. The Fifth Circuit's recent decision in *In re Deepwater Horizon*, stated that, "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims."[16]  The Court noted, however, that, "this contention need not relate specifically to the damages component of the class members' claims. Even an instance of injurious conduct, which would usually relate more directly to the defendant's liability than to the claimant's damages, may constitute 'the same

---

[11] *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.REV. 97, 131-31 (2009)).

[12] *Id.*

[13] *Id.* (alteration, emphasis, citation, and internal quotation marks omitted)(quoting *Wal-Mart*, 131 S. Ct. at 2551).

[14] *Id.*

[15] *Simms v. Jones* 296 F.R.D. 485, 497 (N.D. Tex. 2013) (explaining that "a single common questions of law or fact can suffice" to satisfy commonality (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).

[16] 739 F.3d 790, 810 (5th Cir. 2014).

injury.'"[17]  The Court explained that "the legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."[18] The Court continued that, "this aspect of the law is therefore unchanged since our decision in *Bertulli v. Independent Association of Continental Pilots,*[19] in which we upheld certification of a class action because 'virtually every issue prior to damages [wa]s a common issue.'"[20]

The Court also cited its prior decision in *M.D. ex rel. Stukenberg v. Perry,*[21] for the proposition that "the principal requirement of *Wal–Mart* is merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'"[22] As noted by the Fifth Circuit, "common answers" may "indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct."[23]  As noted by the United States Supreme Court, and affirmed by the United States Fifth Circuit, "[E]ven a single common question will do."[24]

The Fifth Circuit further stated that, "As the Supreme Court explained, a 'contention' regarding the class members' injury is sufficient to satisfy Rule 23, so long as the party seeking certification can show that this contention is 'common' to all the class members, is 'central' to the validity of their claims, and is 'capable' of classwide resolution."[25]  The Court continued that there "is no need to resolve the merits of the common contention at the Rule 23 stage or to

---

[17] *Id.*
[18] *Id.* at 810.
[19] 242 F.3d 290, 298 (5th Cir. 2001).
[20]*Deepwater Horizon*, 739 F.3d at 811.
[21] 675 F.3d 832, 840 (5th Cir. 2012).
[22] *Deepwater Horizon*, 739 F.3d at 811.
[23] *Id.*
[24] *Id.* (citing *Wal-Mart*, 131 S.Ct. at 2551).
[25] *Id.*

attempt prematurely the "determination of its truth or falsity."[26]

In sum, the Fifth Circuit affirmed that "Rule 23 does not therefore become a dress rehearsal for the merits." [27]   The Court cited the Supreme Court's statement in *Amgen*[28] that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." [29] Thus, to satisfy the commonality requirement, the party seeking certification "may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct."[30]

Common questions exist as to whether Allstate's use of Audatex violates Louisiana law. The numerous common factual and legal issues that are "central" to the claims of all class members and "capable" of class wide resolution include:

(1)     Whether Audatex reaches values for total loss vehicles below the actual fair-market value;

(2)     Whether Audatex is a "generally recognized used motor vehicle industry source" consistent with La. R.S. 22:1892B(5)(b);

(3)     Whether Allstate's use of Audatex breached its contracts with its policyholders, and if so, whether the policyholders are entitled to recover under the provisions of La. R.S. 22:1892 and/or 22:1973;

(4)     Whether damages are owed to the Plaintiff/Insured and class members by the Defendant for the damages and losses they suffered as a result of Allstate's failure to pay the fair-market value of their total loss vehicles;

---

[26] *Id.*
[27] *Id.*
[28] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95 (2013).
[29] 739 F.3d at 811.
[30] *Id.*

(5)     Whether Allstate's use of Audatex was arbitrary and capricious and/or whether it violated Allstate's duty to adjust claims fairly and properly under La. R.S. 22:1973A;

(6)     Whether Allstate's use of Audatex and alleged failure to pay the full value of claims violated its duty to pay within sixty (60) days under La. R.S. 22:1973B(5);

(7)     Whether Allstate misrepresented pertinent facts under its policy to its insureds in violation of La. R.S. 22:1973B(1); and

(8)     Whether Allstate caused the Plaintiff and class members to suffer damages.

The central factual and legal issues raised in this lawsuit focus on the alleged conduct of Allstate's corporate management rather than questions concerning individual policyholders. This alleged misconduct and the use of Audatex adversely affected Allstate insureds by producing artificially reduced total loss vehicle values as compared to the values provided by generally recognized used motor vehicle sources such as NADA and Kelley Blue Book.

The Court will not have to look to the particulars of any individual plaintiff's claim to resolve these common questions, but to the Audatex system itself, which works the same way for every claim it processes.

Plaintiff contends that NADA and Kelley Blue Book are generally recognized used motor vehicle sources that comply with La. R.S. 22:1892B(5)(b), and that Audatex is not.  The answer to this contention—right or wrong— will be the same for every class member, thereby satisfying the commonality requirement.   There is no question that establishing Allstate's pattern or practice of undervaluing total loss vehicles, by itself, would benefit the entire class.[31]

   **3.     Typicality.**

---

[31] *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 362 (1977).

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims."[32] "The test for typicality is not demanding and it focuses on the general similarity of the legal and remedial theories behind the plaintiffs' claims."[33] The class representative's claims must "have the same essential characteristics of those of the putative class."[34]

Here, the typicality requirement is readily met.  The Plaintiff in this case is a Louisiana Allstate policyholder victimized in the same way as the other class members by the Defendant's unlawful use of Audatex.  The Plaintiff's and class member's claims all arise from the same course of conduct by Defendant, namely, the use of Audatex to undervalue their total loss vehicle claims in violation of La. R.S. 22:1892B(5)(b).  Each putative class member makes the same legal argument that Allstate engaged in a pattern and practice of cheating its insureds during the class period by using Audatex.  Plaintiff's claim is, therefore, typical of the claims of the class as a whole as it arises out of the same practice or course of conduct by Allstate and is predicated on the same underlying legal theory.

### 4.    Adequacy of Representation.

To satisfy the adequacy requirement, the Plaintiff must "fairly and adequately protect the interests of the class."[35] "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and

---

[32] *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986).
[33] *Woodard v. Andrus*, 272 F.R.D. 185, 191 (W.D. La. 2010) (citing *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir. 1993)).
[34] *James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg,* 675 F.3d at 839–41.
[35] Fed. R. Civ. P. 23(a)(4).

(2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[36] Both requirements are easily met in this case.

First, there are no disabling conflicts between the Plaintiff and the proposed class she seeks to represent that would in any way undermine her ability to adequately represent the class. As Louisiana holders of Allstate's insurance policies, the Plaintiff and the class members share the same interest in determining whether Allstate undervalued their total loss vehicle claims by using Audatex in violation of La. R.S. 22:1892B(5)(b).  The claims and remedies sought by the Plaintiff and the proposed class members are essentially identical.

Second, the Plaintiff will vigorously pursue the interests of the proposed class.  Plaintiff has the requisite level of personal interest in the outcome of this litigation, and is willing to take an active part in the litigation and to perform the duties that are expected of a class representative.

Finally, counsel for the Plaintiff and the proposed class are experienced litigators, all with years of experience in individual and class action litigation in both state and federal courts throughout the nation.  Indeed, proposed class counsel have been named as court-appointed class counsel in multiple class action lawsuits, including class actions involving the application of automated computerized data to determine violations of statutory requirements.  The proposed class counsel include individuals who have been appointed in other proceedings to serve on mass tort, class action, and MDL plaintiffs' steering committees.

**B.**      **The Court should certify the Class pursuant to Rule 23(b)(3).**

Under Rule 23(b)(3), class certification is appropriate when questions of law or fact common to class members predominate over any questions affecting only individual members,

---

[36] *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

and that a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy.  Both predominance and superiority are present here.

**1.  Predominance**.

"The predominance inquiry is 'more demanding' than the commonality requirement of Rule 23(a) and requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'"[37] "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[38]

The Fifth Circuit's decision in *In re Deepwater Horizon* [39] is instructive in regards to the predominance issue.  That Court held that the United States Supreme Court's decision in *Comcast Corp. v. Behrend,*[40] does not preclude certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement. The Fifth Circuit ruled that "nothing in *Comcast* mandates a formula for classwide measurement of damages in all cases."[41]  The Fifth Circuit found that *Comcast* "has no impact on cases such as the present one, in which predominance was based not on common issues of damages but on the numerous common issues of liability."[42] The Fifth Circuit further recognized that "the class members' damage calculations give rise primarily to individual questions that are not capable of classwide resolution."[43]

---

[37] *Maldonado v. Ochsner Clinic Foundation,* 493 F.3d 521, 525 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. AT & T Corp.,* 339 F.3d 294, 301–02 (5th Cir.2003)).
[38] *Amgen Inc.,* 133 S.Ct. at 1191 (2013).
[39] 739 F.3d at 815.
[40] 133 S.Ct. 1426 (2013).
[41] 739 F.3d at 815.
[42] *Id.*
[43] *Id.*

Despite that, the Court found certification to be proper:  Lack of a classwide damages calculation "is not fatal to class certification."[44] In *Bell Atlantic Corp. v. AT&T Corp.,*[45] the Fifth Circuit similarly held that "[e]ven wide disparity among class members as to the amount of damages" does not preclude class certification "and courts, therefore, have certified classes even in light of the need for individualized calculations of damages."[46] The Fifth Circuit also cited its decision in *Steering Committee v. Exxon Mobil Corp.,*[47] for the proposition that it is indeed possible to satisfy the predominance requirements "despite the particular need in such cases for individualized damages calculations."[48] The Court recognized that it has previously affirmed class certification in cases, in which "virtually every issue prior to damages is a common issue."[49]

The proposed class is cohesive because the defining illegal misconduct is Allstate's uniform undervaluing of its insureds' total loss vehicle claims through the systematic use of Audatex.  Allstate itself has demonstrated how the class is manageable and ascertainable by employing Audatex to adjust thousands of total loss vehicle claims.  Further, it has represented to the Court that the information necessary to determine the Class is readily available in its Notice of Removal.

The key question presented in this case is whether Audatex, the system used by Allstate to value its insureds' total loss vehicles, is a recognized used motor vehicle industry source as required by La. R.S. 22:1892(B)(5).  This question predominates over the few remaining individual issues, all of which can be resolved by reference to computer data in Allstate's

---

[44] *Id.*
[45] 339 F.3d 294, 306 (5th Cir. 2003).
[46] *Id.*
[47] 461 F.3d 598, 603 (5th Cir. 2006).
[48] *Id.*  at 816.
[49] *Id*. (quoting *Bertulli,* 242 F.3d at 998).

possession.  Once the Court determines whether Audatex complies with La. R.S. 22:1892, individual questions of damages and penalties can be resolved in a systematic fashion common to all class members by reference to the same data.

Plaintiff accepts as valid the individualized information submitted by Allstate adjusters to Audatex, and does not take issue with those adjusting decisions.  In other words, Plaintiff will not question whether individual class members' mileage or condition assessments were correct. Instead, the problem at issue is *how* Audatex systematically applies the data provided by the adjusters.  Audatex locates alleged "comparable" vehicles to the total loss vehicle in each case, adjusts for mileage and condition, and then produces a final market value for the total loss vehicle without having actually seen or evaluated a single one of the comparables.  Audatex simply takes the data provided by an Allstate adjuster and applies it to a computer algorithm that operates in the same manner for every class member.  Resolution of each individual class member's claim will be achieved in the same way, by applying the same data to a computerized system that *does* comply with the law and comparing the value produced to the value produced by Audatex.

Any suggestion that the Court will need to evaluate individual adjusting decisions is false because this case is not about second-guessing the evaluations performed by adjusters.  Rather, the case is all about whether Audatex itself—as it is applied to the adjusters' data—meets the requirements of La. R.S. 22:1892.  Plaintiff contends that Audatex does not comply with the statute, and that if the same data is applied to a computerized system that *does* comply with the statute, the values produced will be considerably higher.

The question of whether Allstate's total loss vehicle valuation system violates Louisiana law predominates over any individual issues, particularly when Plaintiff is not challenging

15

individual adjusters' decisions, and when data can be uniformly applied to a lawful valuation system in order to easily calculate the difference between values produced by Audatex and values produced by lawful systems.

### 2.   **Superiority.**

In this case, the common issue of whether Audatex complies with La. R.S. 22:1892 predominates over the remaining individual issues, which can be resolved formulaically, by analyzing computerized data, just as Audatex has done thousands of times over the years. Resolving these claims in a single class action is infinitely superior to adjudicating the question of whether Audatex complies with La. R.S. 22:1892 in multiple individual lawsuits.

Trying the class members' claims on a one-by-one basis could create a risk of the Court having trials of some claims that would, as a practical matter, be dispositive of the interests of other class members who were not parties to those particular trials, and, therefore, not present to protect their interests. Individual trials would either burden the Court and others with multiple, individual trials, to consider the identical question of liability literally thousands of times, or, more likely, leave the rights of Allstate's insureds un-vindicated, because the claims are relatively small, and most of Allstate's insureds may not even be aware of their rights under Louisiana law.

Many, if not all, of the proposed class members have what are frequently called "negative value claims" against Allstate—that is, "claims that 'provide the most compelling rationale for finding superiority in a class action' because their monetary value does not warrant individual prosecution due to discovery and expert witness expense and other costs."[50]   Indeed, the "core purpose of the class action [is] to enable the litigation of claims that would otherwise be

---

[50] *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 144 (E.D. La. 2013) (citing *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)).

infeasible to litigate because the value of the claim is dwarfed by the costs of adjudicating it."[51] "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide incentive for any individual to bring a solo action prosecuting his or her rights."[52] Accordingly, in this litigation, where the value of the vast majority of class members' individual claims will likely be limited to somewhere between a few hundred and a few thousand dollars, a class action is clearly the superior method for adjudicating those "negative value" claims.

## IV.   CONCLUSION

Class certification is the best, indeed only, way to vindicate the rights of class members for Allstate's systematic violation of Louisiana law.  The requirements of Rule 23(a) are met, and a question of law common to the class predominates over any questions affecting individual members, making a class action the superior method for fairly and efficiently adjudicating the proposed class' claims.[53]  Allstate's unlawful practice was carried out using Audatex, and any individual issues can be dealt with by applying the same data to a lawful computerized system.

For the foregoing reasons, certification of the proposed class is legally and factually appropriate and warranted, and, after appropriate factual discovery is granted, this Court should grant the Plaintiff's Preliminary Motion for Class Certification.

---

[51] Newberg on Class Actions §4:87 (5th ed.).
[52] *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).
[53] FED. R. CIV. P. 23(b)(3).

RESPECTFULLY SUBMITTED,

/s/John Randall Whaley_____
JOHN RANDALL WHALEY (#25930)
3112 Valley Creek Drive, Ste D
Baton Rouge, LA 70808
Telephone: 225-302-8810
Telecopier: 225-302-8814

KENNETH D. ST. PÉ, APLC
KENNETH D. ST. PÉ
La. Bar Roll No. 22638
311 W. University Ave., Suite A
Lafayette, LA  70506
(337) 534-4043

THE MURRAY FIRM
STEPHEN B. MURRAY, SR.
La. Bar Roll No. 9858
STEPHEN B. MURRAY, JR.
La. Bar Roll No.23877
ARTHUR M. MURRAY
LA. Bar Roll No. 27694
650 Poydras Street, Suite 2150
New Orleans, LA  70130
(504) 525-8100

GEORGE F. RIESS
La. Bar Roll No. 11266
228 St. Charles Ave., Suite 1224
New Orleans, LA 70130
(504) 568-1965

LAW OFFICES OF KENNETH W.
DEJEAN
Kenneth W. DeJean
La. Bar Roll No. 04817
Post Office Box 4325
Lafayette, LA 70502-4325
Telephone: (337) 235-5294
Facsimile: (337) 235-1095
kwdejean@kwdejean.com
ATTORNEYS FOR PLAINTIFF

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been served on all parties through their counsel of record by sending them a copy via electronic mail, this 27th day of February, 2015.

_____/s/  John Randall Whaley_____
JOHN RANDALL WHALEY